UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation, as successor in interest to Colonial Bank by asset acquisition from the FDIC as receiver for Colonial Bank

    Plaintiff,

v.

PARK CIRCLE, LLC, GREGORY TOTH and STEPHANIE MILLER-TOTH,

    Defendants.
_____/

Case No: 2:13-cv-25-FtM-38CM

## ORDER[1]

This matter comes before the Court on the Plaintiff, Branch Banking and Trust Company's (BB&T) Motion for Final Summary Judgment (Doc. #39) filed on February 28, 2014. The Defendant, Gregory Toth filed his Response in Opposition to BB&T's Motion for Final Summary Judgment (Doc. #47) on April 2, 2014. The Motion is now fully briefed and ripe for the Court's review.

## FACTS

On December 23, 2004, the Defendant, Park Circle, LLC executed and delivered to Colonial Bank, BB&T's predecessor in interest, a Promissory Note (Note) in the original

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

principal amount of $1,615,000.00. ([Doc. #39](Doc. #39), Ex. A, ¶ 4).  BB&T became the owner of the note after it acquired Colonial Bank's assets from the Federal Deposit Insurance Corporation (FDIC).  Gregory Toth (Toth) and Stephanie Miller-Toth (Miller) are the sole members of Park Circle, LLC. Both Miller and Toth were required to sign a personal guaranty promising payment of any amount due on the Note granted to Park Circle, LLC (Park Circle, LLC or LLC).

The LLC defaulted on the Note on August 23, 2010, and all amounts due thereafter, and for failing to pay real estate taxes on the subject property for the year 2009.  After the default, BB&T accelerated the Note and demanded immediate payment of the entire unpaid balance together with any accrued interest, and late charges due under the Note.  On September 27, 2010, the principal balance on the Park Circle Property (Property) was $327,517.00.

In the Fall of 2012, Miller approached Nunez/BB&T about selling the Property pursuant to a short sale.  Toth states that beginning in October of 2012 Nunez ceased communicating with him regarding the Property even though up until that time he had been the primary contact between BB&T and the LLC.  Toth continued that Nunez never returned his calls or e-mails and never informed him that the Property was subject to a potential short sale.  Pursuant to the Park Circle, LLC operating agreement all members of the LLC must approve a sale of the Property

On December 19, 2012, the Park Circle Property was sold pursuant to a short sale for $201,598.25.  The proceeds of the short sale were applied to the principal balance. BB&T states the remaining principal balance due on the Note is $125,918.75 plus interest of $36,548.20 calculated through January 3, 2013, plus late fees in the amount of

$6,822.82 for a total of $169,289.77.  Toth was not informed of the short sale by Miller nor BB&T and did not discover the nature of the transaction until January 4, 2013.

On January 15, 2013, BB&T brought the instant action against Toth and Miller jointly and severally for damages in the sum of $169,289.77.  Neither Park Circle, LLC nor Miller responded to the Complaint.  On April 1, 2013, Clerk's Defaults were issued against Park Circle, LLC (Doc. #24) and Miller (Doc. #25) leaving Gregory Toth as the sole active Defendant in this case.

## **STANDARD OF REVIEW**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 U.S. 2505, 91 L. Ed. 2d 202 (1986).  Similarly, an issue is material if it may affect the outcome of the suit under governing law.  Id.   The moving party bears the burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party.  Whatley v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999).  Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  "The

evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." Demyan v. Sun Life Assurance Co. of Canada, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991)). Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment. Celotex, 477 U.S. at 322-323. Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied. Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992).

## **DISCUSSION**

BB&T states that it is entitled to summary judgment on the claims because under Florida law "where [a] guaranty is absolute, the guarantor becomes liable upon non-payment by the principal, and the person in whose favor the guaranty runs has no duty to first pursue the principal before resorting to the guarantors." Mullins v. Sunshine State Service Corp., 540 So. 2d 222, 223 (Fla. 5th DCA 1989). BB&T further argues that Toth's affirmative defenses do not preclude summary judgment.

It is undisputed that both Miller and Toth signed a Guaranty Agreement certifying that they would personally be responsible for entirety of the LLC's loan borrowed from BB&T's predecessor Colonial Bank. (Doc. #39-1, p. 17-18, ¶ 2). The Guaranty Agreement reads in pertinent part "Guarantor unconditionally guarantees and promises to pay when due to Creditor, on demand, in lawful money of the United States, the Guaranteed indebtedness." (Doc. #39, p. 17-18, ¶ 2). It is undisputed that BB&T is the successor in interest to Colonial Bank by virtue of the assignment from the FDIC. (Doc.

#39-1, Ex. A, ¶¶ 5, 11; Ex. B, p. 12). It is further undisputed that Park Circle, LLC defaulted on the loan and that BB&T is entitled to enforce the provisions of the Guaranty.

Under Florida law, Toth as the Guarantor is liable to repay the deficiency debt on the Note. Unless his affirmative defenses establish a genuine issue of material fact that would preclude the issuance of summary judgment, a deficiency judgment should be entered in favor of BB&T. Therefore, unless precluded by one or more of the affirmative defenses, BB&T is entitled to summary judgment. *See* PNC Bank Nat. Ass'n v. Marino, 2014 WL 667780, *4 (M.D. Fla. February 14, 2014) (holding that unless debtors affirmative defenses provided a genuine issue of material fact plaintiff was entitled to summary judgment).

Toth argues that his ten (10) affirmative defenses create genuine issues of material fact that preclude summary judgment in favor of BB&T. Toth asserts that BB&T is barred from collecting the deficiency judgment based upon the following ten (10) affirmative defenses arguing (1) equity bars BB&T from recovering a deficiency judgment, (2) doctrine of unconscionability, (3) estoppel, (4) the Note and terms are unconscionable, (5) unclean hands, (6) laches, (7) the debt has been discharged, (8) Plaintiff is not a proper party, (9) BB&T waived its right to deficiency judgment, and (10) the fair market value of the property at the time of the short sale was greater that the indebtedness. The Court will address the affirmative defenses in order.

### (1) *Whether Equity Bars Recovery of the Deficiency Judgment*

Toth argues that BB&T had an equitable obligation to "speak" to him regarding the specific details of the short sale transaction. Toth argues that under the terms of the Park Circle, LLC agreement all members had to agree to the sale of the Property prior to the

short sale being completed.  Toth states that BB&T knew or should have known that provisions in the LLC's operating agreement prohibited the sale of any asset of the LLC without member approval.

Toth continues that BB&T knew he was a member of the LLC and knew that the LLC's governing documents required all of the members of the LLC to approve the sale of its assets prior to the sale being finalized.  Toth cites to the affidavit filed by Esteban Nunez, BB&T's representative responsible for overseeing the LLC's transactions at the time. (Doc. #39, p.1, ¶¶ 1-2).  Toth argues that Nunez was aware the agreement prohibited the LLC from selling its assets without approval of all of its members, knew that Toth was a guarantor of the Note, and knew or should have known that there was not an approval by the LLC's membership agreeing to the sale of the Property.

Toth's argument lacks merit.  BB&T was not a party to the LLC membership and not bound by the terms of the internal LLC's operating agreement.  BB&T cannot be held responsible for the internal decisions of an entity that it had no control over.

BB&T was approached by Miller in the fall of 2012 about a short sale of the Property securing the note. (Doc. #39-1, p. 3, ¶13).  Miller is the only other member and president of the LLC.  Under the terms of the Guaranty Agreement signed by Toth, BB&T could properly rely on Miller as president of the LLC to execute the short sale.  The Guaranty Agreement states in pertinent part:

> <u>Waiver of Authentication of Validity of Acts of Corporation or Partnership.</u>
> Where Borrower is a corporation or partnership, it is not necessary for [BB&T] to inquire into powers of Borrower or the offices [sic], directors, partners or agent acting or purporting to act in their behalf and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder.

(Doc. # 39-1, p. 26, ¶11). Since the Guaranty Agreement allowed BB&T as the Borrower to rely on the officer purporting to act on behalf of the LLC, BB&T did not have an obligation to look further into the internal operations of the LLC. Thus, pursuant to the terms of the Guaranty Agreement, BB&T properly relied on Miller's offer to short sale the Property.

Furthermore, the Guaranty Agreement provided Toth with the opportunity to challenge the short sale within ten days of discovering the alleged breach. The Agreement reads in pertinent part:

> Guarantor shall give Creditor written notice, within ten (10) days of Guarantor becoming aware thereof, of the occurrence of any action or inaction of Creditor which Guarantor believes may (1) be actionable against Creditor or (2) give rise to a defense to payment hereunder for any reason, including without limitation, commission of a tort or violation of any contractual duty or duty implied at law. Guarantor agrees that unless such notice is given, Guarantor waives any such claim or defense.

(Doc. # 39-1, p. 26, ¶15). Toth acknowledges that he learned of the short sale no later than January 4, 2013, however, Toth never filed a written notice that he objected to the short sale or that the short sale was not approved by the members of the LLC. Thus, Toth did not follow the procedures outlined in the Guaranty which he signed. Since Toth did not follow the procedures outlined in the Guaranty Agreement, his first affirmative defense of equity fails.

*(2) Whether the Doctrine of Unconscionability and the Terms of the Note and Rider Bar the Short Sale*

Toth's second and fourth affirmative defenses state BB&T is barred from collecting a deficiency judgment based upon the doctrine of unconscionability and that the terms of the Note and Rider are unconscionable.

7

There are two types of unconscionability, procedural and substantive. *Fonte v. AT&T Wireless Services, Inc.*, 903 So.2d 1019, 1025 (Fla. 4th DCA 2005). Procedural unconscionability concerns the manner in which the contract is entered, whereas substantive unconscionability looks to whether the contractual terms are unreasonable and unfair. *Romano v. Manor Care, Inc.*, 861 So.2d 59, 62 (Fla. 4th DCA 2003). To decline to enforce a contract as unconscionable, the contract must be both procedurally and substantively unconscionable. *See* Powertel, Inc. v. Bexley, 743 So.2d 570, 574 (Fla. 1st DCA 1999) (citation omitted); Kohl v. Bay Colony Club Condo., Inc., 398 So.2d 865, 867 (Fla. 4th DCA 1981).... Most courts take a "balancing approach" to the unconscionability question, and to tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability. *Fonte*, 903 So.2d at 1025. The amount of either may vary. *Id.* The prevailing view is that procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree.... In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. *Fonte*, 903 So.2d at 1025 (citing *Romano*, 861 So. 2d at 62).

BB&T argues that the affirmative defenses are insufficient because Toth made no factual allegations in support of the affirmative defenses related to unconscionability. In fact, Toth provides no arguments as to why Note and Rider or any of the agreements entered into between himself and BB&T are either substantively or procedurally

8

unconscionable. Both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. Fonte, 903 So.2d at 1025. Here, Toth presents no factual basis to or argument to support either one.

While Toth's response to BB&T's Motion for Summary Judgment does not specifically address the unconscionability argument *per se*, he does address the equitable issue by arguing that BB&T actively or purposefully excluded him from communications pertaining to the short sale during the Fall of 2012. As noted above, BB&T properly relied on the terms of the Guaranty Agreement allowing it to discuss the short sale with Miller as president of the LLC. (Doc. # 39-1, p. 26, ¶11). Moreover, it was Miller who approached BB&T with the proposed short sale. Thus, BB&T did not act with unconscionability when it considered Miller's offer to short sale the Property, but instead acted within the terms of the Guaranty Agreement. Moreover, on December 6, 2012, Nunez sent a reply e-mail to Toth stating he had left a message and would be back in the office by 2:00pm that afternoon. (Doc. #47, Tab 17). So contrary to Toth's argument, BB&T did reply to some of Toth's e-mails/phone calls. Thus, Toth failed to establish a genuine issue of material fact that would support his unsicionability claim in equity.

Because Toth failed to identify any genuine issues of material fact as to these two affirmative defenses, they fail. PNC Bank Nat. Ass'n v. Marino, 2014 WL 667780, *4 (M.D. Fla. February 14, 2014) (denying affirmative defense could prevent summary judgment due to the fact that the Defendant failed to present any evidence of a genuine issue of material fact).

*(3) Estoppel*

In his third affirmative defense, Toth argues that BB&T is estopped from seeking a deficiency judgment based upon the facts alleged in the first two affirmative defenses in that he was not informed of nor did he give his approval to the short sale under the terms of the LLC Operating Agreement. "Equitable estoppel is based on principles of 'fair play and essential justice' and arises when one party lulls another party into a disadvantageous legal position." Major League Baseball v. Morsani, 790 So.2d 1071, 1076 (Fla.2001). The defense requires: "(1) the party against whom estoppel is sought made a representation about a material fact that is contrary to a position it later asserts, and (2) the party seeking estoppel detrimentally relied on that representation." Ford Motor Co. v. O.E. Wheel Distributors, LLC, 868 F.Supp.2d 1350, 1366 (M.D. Fla. 2012) (SourceTrack LLC v. Ariba, Inc., 958 So.2d 523, 526 (Fla.App.2007)).

There is no factual evidence that Toth relied upon a misrepresentation by BB&T regarding the short sale or the terms of the Guaranty Agreement. Toth states that he relied on BB&T's silence arguing that if there is a duty to speak the party's silence can be a misrepresentation. Contrary to Toth's argument that he relied on BB&T's silence to his detriment, the Guaranty Agreement allowed BB&T, as the Borrower, to rely on an officer purporting to act on behalf of the LLC. As such BB&T did not have a duty to look further into the internal operations of the LLC. Nor did BB&T have a duty to speak to all members of the LLC since the Guaranty Agreement allowed BB&T to rely on one of the LLC's officers, in this case, Miller who was president of the LLC. (Doc. #39-1, p. 26, ¶11). Additionally, the Guaranty Agreement gave Toth the opportunity to object to any perceived breach of the Agreement caused by the short sale within ten (10) days after he

learned of the sale.  Toth states he learned of the sale on January 4, 2013. (Doc. #39-1, p. 26, ¶15).  Toth never filed an objection.

Toth failed to provide any factual evidence that he relied on a false statement or silence by BB&T or that BB&T had a duty to communicate with him under the terms of the Guaranty Agreement.  Further, pursuant to the terms of the Guaranty Agreement, BB&T properly relied on Miller's offer to short sale the Property. Thus, Toth failed to support his estopple claim and the affirmative defense fails. PNC Bank Nat. Ass'n, 2014 WL 667780, at *4.

### (4) *Unclean Hands*

Toth's fifth affirmative defense states BB&T cannot recover the deficiency judgment because it comes to the Court with unclean hands.  Toth bases his claim upon the fact that the Property was sold on a short sale without his knowledge or approval as required by the LLC operating agreement.  For a defendant to successfully avail itself of the doctrine of unclean hands, it must satisfy two requirements. "First, the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted. Second, even if directly related, the plaintiff's wrongdoing does not bar relief unless the defendant can show that [he] was personally injured by [the] conduct." Calloway v. Partners Nat. Health Plans, 986 F. 2d 446, 450-51 (11th Cir. 1993).

Toth's claims that BB&T acted with unclean hands because it did not inform him the Property would be sold on a short sale.  Contrary to Toth's allegations, BB&T did not have an obligation to communicate with him under the terms of the Guaranty Agreement.  Under the Guaranty Agreement, BB&T could rely on Miller's offer, as president of the LLC to short sale the Property. *Supra* p. 5.  Thus, Toth fails to meet the first requirement of

establishing that BB&T had unclean hands because BB&T did not have an obligation to consult with him under the terms of the Guaranty Agreement he signed.

Furthermore, the Guaranty Agreement provided Toth with the opportunity to file a written grievance with BB&T over the short sale of the Property within ten (10) days of him finding out about the sale. He states he discovered the short sale on January 4, 2012, but never registered a written complaint with BB&T.

Finally, Toth states that BB&T refused to speak with him prior to the short sale of the Property. On December 6, 2012, Toth sent Nunez an e-mail asking to speak with him in regards to the Park Circle Property. Nunez responded with an e-mail that read "I just left you a voicemail. I'm going to lunch then meeting a client. Should be back in the office by 2:00pm." (Doc. #47, Tab 17). Thus, contrary to Toth's argument that Nunez never returned his calls or answered his e-mails, Toth's own exhibit demonstrates that at least once prior to the short sale Nunez tried to speak with Toth. As such, the affirmative defense of unclean hands fails.

### (5) Laches

Toth claims that BB&T's deficiency claim should be denied because of the doctrine of laches. Under Florida law, laches can be invoked where there has been "an unreasonable delay in asserting a known right which causes undue prejudice to the party against whom the claim is asserted." Coachmen Industries, Inc. v. Royal Surplus Lines Ins. Co., 2007 WL 1837842, *12 (M.D. Fla. June 26, 2007) (citing Baker v. Baker, 920 So.2d 689, 693 (Fla. 2d DCA 2006) (emphasis omitted). Undue prejudice must be shown "by 'very clear and positive evidence.'" Coachmen Industries, Inc., 2007 WL 1837842 at *12 (quoting Smith v. Branch, 391 So.2d 797, 798 (Fla. 2d DCA 1980)).

12

> "[T]he delay required to render the defense of laches available must have been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and thus make the doing of equity either doubtful or impossible, as through… loss or obscuration of evidence of the transaction in issue; or there must have occurred in the meantime a change in conditions that would render it inequitable to enforce the right asserted."

Coachmen Industries, Inc., 2007 WL 1837842 at *12 (quoting Stephenson v. Stephenson, 52 So.2d 684, 686 (Fla.1951) (per curiam)) (first alteration in original, second added to reflect original text).

Toth's affirmative defense regarding laches lacks merit. Laches depends upon an unreasonable delay in asserting a known right. The short sale closed on December 19, 2012. (Doc. #39-1, p. 24). BB&T filed this action on January 15, 2013. Thus, BB&T brought this action less than a month after the proceeds from the short sale left a deficiency indebtedness on the Note. As such, there was no unreasonable delay between BB&T learning of the deficiency and filing this suit to assert its claim. The laches affirmative defense fails.

### (6) *Whether the Debt has Been Discharged*

Toth's seventh affirmative defense states the debt has been discharged. There is no evidence to support this affirmative defense. The short sale of the Property netted $201,598.25 leaving an outstanding debt of over $125,000.00 still due under the note. In his memorandum of law, Toth acknowledges that the proceeds of the short sale were not sufficient to pay off the remaining debt. (Doc. #47, p. 7). The Estopple Letter sent by BB&T on December 18, 2012, states in pertinent part:

> Notwithstanding Branch Banking and Trust Company's acceptance of minimum net sale proceeds in the amount of $201,598.25, Branch Banking and Trust Company is not waiving its rights and remedies as to the

13

> deficiency resulting from the sale against the Borrower or guarantors Gregory Toth and Stephanie Miller-Toth a/k/a Stephanie Miller.

(Doc. #39-1, p.25). It is clear based on the facts in the record that the debt has not been discharged and that BB&T reserved the right to pursue the deficiency debt. Thus, the affirmative defense fails.

### (7) Whether Plaintiff is a Proper Party

Toth's eighth affirmative defense states that BB&T is not a proper party to the action. BB&T obtained Toth's loan on the Property by virtue of its acquisition of Colonial Bank's assets from the FDIC. (Doc. #39-1, Ex. A, ¶¶ 5, 11; Ex. B, p. 12). Thus BB&T is the proper Party Plaintiff in this case. The affirmative defense does not present a genuine issue of material fact and as such fails.

### (8) Whether BB&T Waived Its Right to Deficiency Judgment

Toth's ninth affirmative defense states that BB&T waived the right to pursue a deficiency judgment. Florida law defines "'waiver' as the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." Wells Fargo Bank, N.A. v. Osprey Commerce Center, LLC, 2014 WL 1271460, *4 (M.D. Fla. March 26, 2014) (quoting Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla.2005) (citing Major League Baseball v. Morsani, 790 So.2d 1071, 1077 n. 12 (Fla.2001)). Waiver may be express or implied. Wells Fargo Bank, 2014 WL 1271460 at *4 (citing Taylor v. Kenco Chem. & Mfg. Corp., 465 So.2d 581, 587 (Fla. 1st DCA 1985)).

BB&T specifically noted in the Estopple letter that it reserved the right to pursue any deficiency that remained after the short sale of the Property. (Doc. #39-1, p.25).

Within a month of the close on the short sale, BB&T filed the instant lawsuit for deficiency judgment. Contrary to Toth's ninth affirmative defense of waiver, BB&T sought to enforce its deficiency judgment from the very beginning. Thus, BB&T did not voluntarily and intentionally relinquish its right to seek a deficiency judgment. The affirmative defense fails to establish a genuine issue of material fact and as such, the affirmative defense of waiver fails.

### (9) *Whether Short Sale was for Fair Market Value*

Toth's tenth affirmative defense claims the Park Circle, LLC Property was sold at below market value and therefore, he should not be held liable for any deficiency between the debt and the proceeds of the short sale. Toth argues that had BB&T notified him prior to the short sale of the property he might have been able to sell the property for more than what was received and prevented a deficiency on the indebtedness.

The granting of a deficiency decree in a mortgage foreclosure action is a matter for the sound judicial discretion of the trial court." Flagstar Bank, FSB v. Hochstadt, 2010 WL 5476733, *7 (S.D. Fla. December 30, 2010) (citing S/D Enters., Inc. v. Chase Manhattan Bank, 374 So.2d 1121, 1122 (Fla. 3d DCA 1979). A mortgagee "seeking a deficiency judgment after completion of a mortgage foreclosure sale in Florida must present competent evidence that the indebtedness owed exceeds the fair market value of the property on the date of foreclosure." First Union Nat'l Bank v. Goodwin Beach P'ship, 644 So.2d 1361, 1362 (Fla. 5th DCA 1994). In Florida, "the granting of a deficiency judgment is the rule rather than the exception." S/D Enters., 374 So.2d at 1122.

Toth does not provide any evidence that the Property was sold for less than the market value. His argument is based upon speculation. Furthermore, it was not BB&T

that initially broached the idea of a short sale but Miller, as president of the LLC.  Thus, the short sale was not done at the behest of BB&T but, the president of Park Circle, LLC.  BB&T never took title of the Property and was not involved in the sale of the Property other than to approve the short sale as the holder of the Note.  As such, Toth's tenth affirmative defense that the property was sold less than the market value fails to create a genuine issue of material fact.

## CONCLUSION

Toth has failed to establish a genuine issue of material fact that would preclude summary judgment with his ten (10) affirmative defenses.  The Court does not find good cause to exercise its discretion in equity to prevent summary judgment.  Therefore, BB&T's Motion for Summary Judgment is due to be granted.

Accordingly, it is now

**ORDERED:**

The Plaintiff, Branch Banking and Trust Company's (BB&T) Motion for Final Summary Judgment ([Doc. #39](Doc. #39)) is **GRANTED**.  The Clerk of the Court is directed to:

(1) **DISMISS** the case and terminate any pending motions, and enter judgment accordingly.

(2) The Plaintiff Branch Banking and Trust Company is awarded damages in the amount of **$125,918.75** along with interest of **$36,548.20** through January 3, 2013, plus **$6,822.82** in late fees for a total deficiency judgment award of **$169,289.77** with additional per diem rate of interest of $62.10 accruing thereafter.

(3) The Court will **RESERVE** on the entry of attorney's fees and cost and directs the Plaintiff to submit a proper motion for fees and costs providing documentation (with hours worked and a description of the work performed for each hour entry) for any attorney's fees and costs within **twenty-one (21) days** of the entry of judgment.

(4) The final pretrial conference and trial are hereby cancelled.

**DONE** and **ORDERED** in Fort Myers, Florida this 8th day of May, 2014.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record